IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PAMELA L. HARRIS,                     )
                                      )
            Plaintiff,                )
                                      )
      v.                              )   1:21CV99
                                      )
KILOLO KIJAKAZI,                      )
Acting Commissioner of Social Security,[1]  )
                                      )
            Defendant.                )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Pamela L. Harris ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on June 27, 2019, alleging a disability onset date of June 17, 2019. (Tr. at 12, 201-04.)[2] Her application was denied initially (Tr. at 67-80, 99-102) and upon reconsideration (Tr. at 81-98, 105-09). Thereafter, Plaintiff requested

---

[1] Kilolo Kijakazi was appointed the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 110-11.) On May 7, 2020, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 12.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and, on November 30, 2020, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. <u>LEGAL STANDARD</u>

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hancock v. Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

Case 1:21-cv-00099-CCE-JEP   Document 19   Filed 08/23/22   Page 2 of 12

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date, June 17, 2019. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> ischemic heart disease, chronic obstructive pulmonary disease (COPD), emphysema, obstructive sleep apnea (OSA), depression, anxiety, attention deficit/hyperactivity disorder (ADHD) and post[-]traumatic stress disorder (PTSD)[.]

(Tr. at 14.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 15-17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, additional limitations:

5

climbing ramps and stairs frequently; ladders, ropes or scaffolds occasionally; and frequently crawling; only occasional exposure to dust, odors, fumes and pulmonary irritants; limited to performing simple, routine and repetitive tasks, but not at a production rate pace, such as, assembly line work; limited to simple work related decisions, with the ability to interact with supervisors and coworkers on a frequent basis, but the general public, only on an occasional basis.

(Tr. at 17.) At step four of the analysis, the ALJ found, based on the testimony of the vocational expert, that Plaintiff remained able to perform her past relevant work as a garment sorter, as generally performed. (Tr. at 24-25.) The ALJ also made an alternative finding at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 25-26.) Based on these findings, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 26.)

Plaintiff now raises five challenges to the ALJ's RFC assessment. In particular, she contends that the ALJ erred in (1) failing to discuss Plaintiff's hearing testimony regarding her mental impairments, (2) failing to weigh the opinion of Plaintiff's treating psychiatrist, (3) failing to properly consider the extent to which Plaintiff can perform her daily activities, (4) selectively citing and mischaracterizing psychiatric evidence, and (5) "relying on an incorrect regulatory framework to assess" Plaintiff's RFC. (Pl.'s Br. [Doc. #13] at 2-4.) After a thorough review of the record, the Court agrees that the ALJ mischaracterized Plaintiff's activities of daily living when using them as a basis for discounting Plaintiff's subjective complaints and other evidence favorable to her disability claim. In light of this error, the Court need not to address the additional contentions raised by Plaintiff.

In Woods v. Berryhill, the Fourth Circuit explained that "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Lewis v. Berryhill, 858 F.3d 858, 868, n.3 (4th Cir. 2017) ("The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as 'driv[ing] short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and watch television.' The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record.") (citation omitted); Brown v. Comm'r, 873 F.3d 251, 263 (4th Cir. 2017) ("[T]he ALJ noted that Brown testified to daily activities of living that included 'cooking, driving, doing laundry, collecting coins, attending church and shopping.' The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities depicted by Brown—showed that he could persist through an eight-hour workday."); see also Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 at *5-8 (M.D.N.C. Jul. 23, 2015).

In the present case, the ALJ generally acknowledged Plaintiff's alleged limitations and their impact on her ability to perform daily activities by citing to an Adult Function Report completed by Plaintiff on July 21, 2019. In that report, Plaintiff indicated that

> her conditions affected her ability for [sic] lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, remembering completing tasks,

7

concentrating, understanding, following instructions, using her hands[,] and getting along with others. [She] further stated that her disabilities limited her ability for concentrating, staying focused, and breathing.

(Tr. at 18 (citations omitted).) However, in the next paragraph of his decision, the ALJ found as follows:

> Despite [her] allegations, [Plaintiff] stated on the same function report that she took care of two elderly dogs, and that she fed them and gave them water and then would let them out to go potty on a daily basis, which would be inconsistent with her previous statements that she had difficulty with bending, reaching, and using her hands. [Plaintiff] also stated that she had no problems getting dressed or bathing, which would be inconsistent with her previous statements that she had difficulty with bending, standing, reaching, and using her hands. Additionally, [Plaintiff] stated that she could prepare her own meals on a daily basis and drive a car, which would be inconsistent with her previous statements that she had difficulty with standing, reaching, walking, remembering, completing tasks, and concentrating. [Plaintiff] stated that she could go shopping online for personal items and household items, and she could pay bills, count change, handle a savings account[,] and use a checkbook or money order, which would be inconsistent with her previous statements that she had difficulty with remembering, completing tasks, concentrating, understanding, following instructions and using her hands. [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitation.

(Tr. at 18 (citations omitted).) In other words, the ALJ used Plaintiff's reported activities both to discount the impact of her impairments on her ability to perform basic work activities and to discount the credibility of Plaintiff's allegations generally. Accordingly, the ALJ's treatment of Plaintiff's activities played a pivotal role in his RFC assessment.

Although the ALJ found that Plaintiff's activities were "inconsistent" with her alleged limitations, as set out above, he failed to describe <u>how</u> they were inconsistent or <u>the extent</u> to which the activities demonstrated any inconsistency. For example, he concluded that Plaintiff's ability to fill her dogs' food and water dishes and open the door to let them out was "inconsistent with her previous statements that she had difficulty with bending, reaching, and

8

using her hands." (Tr. at 18.) However, the ALJ failed to explain how Plaintiff's ability to fill bowls and open doors, even several times per day, is inconsistent with a limited ability to bend, reach, or use her hands continuously throughout an 8-hour workday. Similarly, Plaintiff's ability to bathe and dress herself, while demonstrating some residual physical abilities, is not patently "inconsistent with her previous statements that she had difficulty with bending, standing, reaching, and using her hands," and Plaintiff's ability to cook and drive does not necessarily conflict with a limited to ability to stand, reach, walk, remember, complete tasks, and concentrate. (Tr. at 18.) The ALJ also failed to explain how Plaintiff's ability to shop online and handle basic financial tasks is inconsistent with difficulties "remembering and completing tasks, concentrating, understanding, [and] following instructions[,] and using her hands" during the course of a full workday. (Tr. at 18.) Accordingly, even if Plaintiff could perform the activities cited by the ALJ without qualification, the ALJ omitted any explanation sufficiently connecting these activities to Plaintiff's ability to perform basic work activities, such as walking, standing, bending, reaching, and following instructions, for 8 hours per day.

Moreover, nothing in the ALJ's discussion of Plaintiff's activities qualifies them in any way as required by <u>Woods</u>. The ALJ cited Plaintiff's abilities to drive, cook, shop, and perform personal tasks with no reference to the modified nature of these activities. As Plaintiff correctly notes,

> the ALJ disregarded qualifying details about the extent to which [Plaintiff] can perform these activities that she included in the same function report. For example, [Plaintiff] explained that the "meals" she prepares are "cereals, fruit, sandwiches, [and] microwaveable meals" that take only about 10 minutes to prepare and that "she is unable to prepare cooked meals due to [her] disabilities." She explained that she drives "only if [she has] no choice" and that driving causes "fear of [an] anxiety attack." She shops online only "once a month" for "about 15-20 [minutes]. She is able to pay bills, count change,

9

handle a savings account, and use a checkbook/money order, but her "husband pays the bills and handle[s] all account[s,]" and she "tend[s] to spend more [money] and [spend it] irrationally."

(Pl.'s Br. at 13-14) (citing Tr. at 271-73).[5] In short, the ALJ's unqualified listing of Plaintiff's activities fails to provide a basis for his finding that Plaintiff's "described daily activities that are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitation." (Tr. at 18.)

This failure is further exacerbated by the ALJ's failure to consider or discuss any of Plaintiff's testimony at the hearing, including specifically as it relates to her mental impairments and the impact on her daily activities. As Plaintiff notes in the briefing, Plaintiff testified in much greater detail at the hearing about the severity of her mental impairments, including the nature and effect of her panic attacks, the limits on her driving based on her concern for having a panic attack while driving, her panic attacks in stores, her paranoia about people she encounters, her inability to leave her home without her aunt or her husband accompanying her, and her inability to concentrate or focus while experiencing anxiety symptoms. (Pl.'s Br. at 5-10) (citing Tr. at 40, 41, 43, 45, 46, 47.) As Plaintiff notes, the ALJ did not address or cite the testimony at all, and there is no indication that it was considered in the decision. The Court need not consider whether this failure would provide a separate basis for remand, given that the failure to fully consider the testimony affects the ALJ's reliance on Plaintiff's daily activities, discussed above. Specifically, the ALJ relied in significant part on a characterization

---

[5] Plaintiff's third party function report from her husband similarly reflects that he helps her to take care of the dogs, that he cooks or brings home dinner, that Plaintiff only makes herself sandwiches or frozen meals that take 5 to 10 minutes, that she does not do housework, that she is very fearful to leave the house and he has to go with her, that she does not shower or take care of herself as much as she should, that she has to be reminded to take her medicine, that he takes care of all of the finances, that she has difficulty following instructions and can't follow spoke instructions at all, and that she does not have any interest in anything. (Tr. at 262-67.)

10

of the daily activities set out in the Function Report, without considering the qualifications or limitations included in the Function Report, and without considering the extent to which Plaintiff could perform those activities in light of her testimony at the hearing.

Because the ALJ relied so heavily on Plaintiff's daily activities from the Function Report, but mischaracterized the nature of Plaintiff's activities and did not address the extent to which Plaintiff could engage in those daily activities in light of the limitations and qualifications reflected in the Function Report, and similarly did not address the limitations and qualifications reflected in detail in Plaintiff's testimony, the decision is not supported by substantial evidence, and this case should be remanded so that the ALJ can consider those issues in the first instance. The Court will therefore recommend that this case be remanded to the ALJ for further consideration of Plaintiff's mental impairments, specifically including her daily activities and the extent to which she can perform the activities, as reflected not only in her Function Report but also in her testimony before the ALJ. Upon remand, the ALJ should consider Plaintiff's activities, as described in her function report, testimony, and other evidence, in full and in accordance with <u>Woods</u> and its progeny.[6]

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

---

[6] Because the remand will involve consideration of claims based on an updated record, the ALJ may also address any of the other matters raised by Plaintiff, and in light of that the Court need not address the additional contentions raised by Plaintiff, other than as noted above. The Court does note that in discussing Plaintiff's mental impairments, the ALJ stated that "[d]uring multiple psychiatric examinations, [Plaintiff] had a normal mood and affect" and "her thought processes were coherent." (Tr. at 24.) However, the ALJ then cited not to psychiatric examinations but to a treatment record from Plaintiff's pulmonologist who assessed her for sleep apnea and Plaintiff's emergency department evaluations for shortness of breath and complaints of chest discomfort. (Tr. at 24, 377, 402, 413, 639). The ALJ can further address the psychiatric examinations and evaluations, including any updated evaluations, on remand.

under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #15] should be DENIED, and Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #12] should be GRANTED.

This, the 23rd day of August, 2022.

/s/ Joi Elizabeth Peake  
United States Magistrate Judge